## THE PRINCETON.

### HOBOKEN FERRY CO. v. THE PRINCETON.

#### (District Court, S. D. New York. March 26, 1894.)

COLLISION—STEAM VESSELS—FOG—SIGNALS—FERRYBOAT INSIDE OF PIER LINE.
    A ferryboat, in a fog, which had made her trip across the Hudson river, and arrived inside of the line of the New York piers, and was there maneuvering to get into her slip, was *held* not bound to continue the fog signals which she had stopped on getting inside of such line, nor liable for damages by collision to another ferryboat, which, through lack of proper caution and watchfulness, had got within the pier lines.

Stewart & Macklin, for libelant.

Robinson, Biddle & Ward, for respondent.

BROWN, District Judge. On the 11th of August, 1893, at about quarter past 6 in the morning, the ferryboat Orange, from Hoboken, in making her trip to the Barclay Street ferry, during a thick fog, came in collision with the ferryboat Princeton, near the latter's slip at Desbrosses street. The place of collision was nearly half a mile above Barclay street, and was so near the Desbrosses Street slip as to be within a line running from the end of pier 41, just above, to the end of the pier just below the ferry racks.

There is considerable difference in the testimony of the witnesses as to the distance at which objects could be seen. But if, as the pilot and other witnesses for the Orange testify, the masts of vessels in the slips above could be seen shortly before reaching Desbrosses street, there was no sufficient reason why pier 41 should have been approached so near without being perceived, or at such speed as the Orange was evidently making. It is clear that the Orange was intentionally brought near to the New York shore in order to make her way down towards Barclay street; but in that situation, and in so thick a fog, she was bound to proceed with the greatest caution. I cannot credit the testimony of her witnesses, that she was going so slowly as they claim; nor that she was moving backward in the water at the time of collision. I am obliged to find that through a speed excessive for such a fog, and through a lack of proper caution and proper watchfulness in approaching the New York piers, she got inside the line of the piers, and that this was the primary cause of the collision.

As respects the Princeton, which was embarrassed in making her slip by a tug and tow that crossed ahead of her, the only question is whether, while maneuvering inside of the line of the piers, she was bound to continue sounding her fog signals, which had been stopped from the time she got inside that line. She first got across her slip, and was unable to enter it. Up to that time she had continued her fog signals. After that she was simply maneuvering within the line of the piers sufficiently to get inside of the lower ferry rack, but did not again before collision go outside of the piers. The evidence shows that objects within these limits could be seen. There was no need of whistles for the benefit of any vessels maneuvering within

these narrow limits.    No vessels from outside were to be expected there.    The Orange had no business in such a situation, and came there by her own negligence alone.    Whistles given from such a situation might mislead vessels navigating outside, instead of benefiting them.

On the whole, I am of the opinion that the rule requiring fog signals is not applicable in such a case; and that the lack of such signals was not a breach of any duty which the Princeton owed to the Orange, or to which the latter is entitled to take exception.

The libel is dismissed, with costs.